Mr. Justice Goldberg
delivered the opinion of the Court.
These appeals raise the question of whether the McGuire Act, 66 Stat. 631, 15 U. S. C. §§ 45 (a)(l)-(5), permits the application and enforcement of the Ohio Fair Trade Act against appellant in support of appellees’ systems of retail price maintenance. For the reasons stated below, we hold that the Ohio Act, as applied to the facts of these cases, comes within the provisions of the McGuire Act exempting certain resale price systems from the *519 prohibitions of the Sherman Act, 26 Stat. 209, 15 U. S. C. § 1 et seg.
The two appeals, one involving The Upjohn Co. and one involving Eli Lilly & Co., were considered together in the Ohio courts.[1] For simplicity we state only the facts of the Lilly case. Appellant, Hudson Distributors, Inc., owns and operates a retail drug chain in Cleveland, Ohio. Appellee, Eli Lilly & Co., manufactures pharmaceutical products bearing its trademarks and trade names. Lilly sells its products directly to wholesalers and makes no sales to retailers. Hudson purchases Lilly brand products from Regal D. S., Inc., a Michigan wholesaler.
In June 1959, the Ohio Legislature enacted a new Fair Trade Act, Ohio Revised Code §§ 1333.27-1333.34. Subsequently Lilly sent letters to all Ohio retailers of Lilly products, including Hudson, to notify them of Lilly’s intention to establish minimum retail resale prices for its trademarked products pursuant to the new Ohio Act and to invite the retailers to enter into written fair-trade contracts. More than 1,400 Ohio retailers of Lilly products (about 65% of all the retail pharmacists in Ohio) signed fair-trade contracts with Lilly. Hudson, however, refused to enter into a written contract with Lilly and ignored the specified minimum resale prices. Lilly formally notified Hudson that the Ohio Act required Hudson to observe the minimum retail resale prices for Lilly commodities. Hudson, nevertheless, continued to purchase and then to resell Lilly products at less than the stipulated minimum retail resale prices.
Hudson thereupon filed a petition in the Court of Common Pleas for Cuyahoga County, Ohio, for a judgment declaring the Ohio Act invalid under the State Constitu *520 tion and federal law. Lilly answered and cross-petitioned for enforcement of the Ohio Act against Hudson. The Court of Common Pleas held the Ohio Act unconstitutional under the State Constitution. On appeal, the Court of Appeals for Cuyahoga County, after discussing the federal and state legislation, 117 Ohio App. 207, 176 N. E. 2d 236, reversed the trial court and entered a judgment declaring that the Ohio Act was not “in violation of the Constitution of the State of Ohio nor of the Constitution of the United States . . . The court remanded the case “for further proceedings according to law with respect to the cross-petition . ...” [2] On further appeal, the Supreme Court of Ohio affirmed [3] the *521 judgment of the Court of Appeals.[4] 174 Ohio St. 487, 190 N. E. 2d 460. This Court noted probable jurisdiction. 375 U. S.938, 939.
Hudson contends that the provisions of the Ohio Act under which Lilly established minimum resale prices are not authorized by the McGuire Act, 66 Stat. 631, 15 U. S. C. §§45 (a)(l)-(5).[5] Section 2 of the McGuire Act provides in pertinent part as follows:
“Nothing contained in this section or in any of the Antitrust Acts shall render unlawful any contracts or agreements prescribing minimum or stipulated prices, . . . when contracts or agreements of that description are lawful as applied to intrastate transactions under any statute, law, or public policy now or hereafter in effect in any State . . .
Section 3 of the McGuire Act reads as follows:
“Nothing contained in this section or in any of the Antitrust Acts shall render unlawful the exercise or the enforcement of any right or right of action created by any statute, law, or public policy now or hereafter in effect in any State, Territory, or the District of Columbia, which in substance provides that willfully and knowingly advertising, offering for *522 sale, or selling any commodity at less than the price or prices prescribed in such contracts or agreements whether the person so advertising, offering for sale, or selling is or is not a party to such a contract or agreement, is unfair competition and is actionable at the suit of any person damaged thereby.”
Before the enactment of the McGuire Act, this Court in 1951 in Schwegmann Bros. v. Calvert Distillers Corp., 341 U. S. 384, considered whether the Miller-Tydings Act, 50 Stat. 693, 15 U. S. C. § 1, removed from the prohibition of the Sherman Act, 26 Stat. 209, 15 U. S. C. § 1 et seq., a state statute which authorized a trademark owner, by notice, to require a retailer who had not executed a written contract to observe resale price maintenance. Respondents in that case argued that since the Sherman Act outlawed “contracts” in restraint of trade and since the Miller-Tydings amendment to the Sherman Act excepted “contracts or agreements prescribing minimum prices for the resale” of a commodity where such contracts or agreements were lawful under state law, the Miller-Tydings Act therefore immunized all arrangements involving resale price maintenance authorized by state law. 341 U. S., at 387. After examining the history of the Miller-Tydings Act, the Court concluded that Congress had intended the words “contracts or agreements” as contained in that Act to be used “in their normal and customary meaning,” id., at 388, and to cover only arrangements whereby the retailer voluntarily agreed to be bound by the resale price restrictions. The Court held therefore that the state resale price maintenance law could not be applied to nonsigners — “recalcitrants . . . dragged in by the heels and compelled to submit to price fixing.” Id., at 390. The Court stated that:
“It should be remembered that it was the state laws that the federal law was designed to accommodate. Federal regulation was to give way to state *523 regulation. When state regulation provided for resale price maintenance by both those who contracted and those who did not, and the federal regulation was relaxed only as respects 'contracts or agreements/ the inference is strong that Congress left the noncontracting group to be governed by preexisting law.” Id., at 395.
Shortly after the Schwegmann decision, Congress passed the McGuire Act,[6] 66 Stat. 631, 15 U. S. C. §§ 45 (a) (l)-(5). The Report of the House Committee on Interstate and Foreign Commerce, which accompanied the McGuire Act, declared that:
"The primary purpose of the [McGuire] bill is to reaffirm the very same proposition which, in the committee’s opinion, the Congress intended to enact into law when it passed the Miller-Tydings Act . . . , to the effect that the application and enforcement of State fair-trade laws — including the nonsigner provisions of such laws — with regard to interstate transactions shall not constitute a violation of the Federal Trade Commission Act or the Sherman Antitrust Act. This reaffirmation is made necessary because of the decision of a divided Supreme Court in Schwegmann v. Calvert Distillers Corpora *524 tion (341 U. S. 384, May 21, 1951). In that case, six members of the Court held that the Miller-Tydings Act did not exempt from these Federal laws enforcement of State fair trade laws with respect to nonsigners. Three members of the Court held that the Miller-Tydings Act did so apply.
“The end result of the Supreme Court decision has been seriously to undermine the effectiveness of the Miller-Tydings Act and, in turn, of the fair-trade laws enacted by 45 States. H. R. 5767, as amended, is designed to restore the effectiveness of these acts by making it abundantly clear that Congress means to let State fair-trade laws apply in their totality; that is, with respect to nonsigners as well as signers.” (Emphasis added.) H. R. Rep. No. 1437, 82d Cong., 2d Sess., at 1-2.
This authoritative report evinces the clear intention of Congress that, where sanctioned by a state fair-trade act, a trademark owner such as Lilly could be permitted to enforce, even against a nonsigning retailer such as Hudson, the stipulated minimum prices established by written contracts with other retailers.[7]
Without disputing this interpretation of the McGuire Act, Hudson argues that the Ohio Act as interpreted by the Ohio courts reaches beyond the exemptive terms of the federal Act by permitting the maintenance of resale prices “by notice alone” where no contract has been entered into between the owner of the trademark and any retailer. Hudson emphasizes that the Ohio courts sustained the Ohio Act under the State Constitution on the theory that Hudson, simply by acquiring Lilly’s products *525 with notice of the stipulated prices, impliedly contracted to observe the minimum prices. This implied contract theory was deemed necessary by the Ohio Legislature and by the Ohio courts to satisfy the State Constitution which had recently been held to invalidate the enforcement of resale prices against nonsigners. Union Carbide & Carbon Corp. v. Bargain Fair, Inc., 167 Ohio St. 182, 147 N. E. 2d 481 (1958). Whatever merit there may be in the argument that the logic of the Ohio implied contract theory would apply to prices set by notice alone and without any conventional or express contracts, on the facts of the present case we need not and do not consider whether a state statute so applied would involve “contracts or agreements” in the sense in which those terms are used in the McGuire Act.[8] The undisputed facts show that Lilly had established a system of resale price maintenance involving written contracts with some 1,400 Ohio retailers. Section 1333.29 (A) of the Ohio Act authorizes the establishment of minimum prices through such contracts. Under these circumstances the fact that the Ohio law, as construed for purposes of assessing its validity under the State Constitution, regards Hudson as a “contractor” (or “implied contractor”) rather than as a nonsigner does not control the application and effect of the federal statute — the McGuire Act. Section 3 of the federal Act plainly upholds “any right or right of action created by any statute ... in effect in any State . . . which in substance” permits enforcement of resale prices prescribed in contracts whether or not the violating seller was a party to those contracts. For the purposes of § 3 of the McGuire Act, therefore, it is clear that these cases involve the requisite contracts with retailers,[9] that, regard *526 less of whether Hudson itself entered into “contracts” within the meaning of the McGuire Act, Hudson was at least a nonsigner, and that under such circumstances Congress plainly intended “to let State fair-trade laws apply . . . with respect to nonsigners as well as signers.” H. R. Rep. No. 1437, 82d Cong., 2d Sess., at 2. Accordingly we hold that the Ohio Act, as applied to the facts of these cases, comes within the terms of the McGuire Act.
Hudson also argues that the Ohio statute can be read to authorize fair-trade prices to be established by persons other than the owner of the trademark or trade name. This contention raises a hypothetical issue: Lilly is the owner of all trademarks affixed to its goods and the Ohio Supreme Court has not interpreted the statute as applying to persons other than owners. Hudson further argues that § 1333.29 (A) of the Ohio Act authorizes a proprietor to establish minimum resale prices for wholesale distributors with whom it competes and therefore conflicts with the McGuire Act under this Court’s decision in United States v. McKesson & Robbins, Inc., 351 U. S. 305. This argument also raises a hypothetical question for, as noted, Lilly sells only to wholesalers and does not sell to retailers.[10]
The questions raised by Hudson in its second amended answer to the cross-petition,[11] including the contention *527 that Paragraph 6 of the Lilly fair-trade contracts compels retailers to enter into allegedly unlawful horizontal price-fixing agreements in violation of § 1 of the Sherman Act, are not properly before us. They are pending and unresolved in the Ohio Court of Common Pleas, Cuyahoga County. Hudson’s remaining questions are not properly presented for resolution on this appeal; they concern issues involving alleged interpretations of the Ohio Act not made or considered by the Ohio courts or not raised by the facts of the case. Asbury Hospital v. Cass County, 326 U. S. 207, 213-214; Alabama State Federation of Labor v. McAdory, 325 U. S. 450, 470-471.
The price fixing authorized by the Ohio Fair Trade Act and involving goods moving in interstate commerce would be, absent approval by Congress, clearly illegal under the Sherman Act, 26 Stat. 209,15 U. S. C. § 1 et seq. Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U. S. 373. “Fixing minimum prices, like other types of price fixing, is illegal per se.” Schwegmann Bros. v. Calvert Distillers Corp., supra, at 386. Congress, however, in the McGuire Act has approved state statutes sanctioning resale price maintenance schemes such as those involved here. Whether it is good policy to permit such laws is a matter for Congress to decide. Where the statutory language and the legislative history clearly indicate the purpose of Congress that purpose must be upheld. We therefore affirm the judgments of the Supreme Court of Ohio.

Affirmed.

The Supreme Court of Ohio stated: “The facts in both cases are similar and the law applicable is the same. The appeals will be treated together, since the assignments of errors in both cases are exactly the same.” 174 Ohio St. 487, 190 N. E. 2d 460.

 Hudson, in its second amended answer to the cross-petition, allegedly raised the following defenses:
“(1) Hudson did not wilfully resell at less than Lilly’s fair trade prices;
“(2) Lilly, a foreign corporation, was not properly licensed to transact business in the State of Ohio;
“(3) paragraph 6 of Lilly’s fair trade contract [which provides that: “Retailer agrees not to knowingly sell any of Manufacturer’s ‘Identified Commodities’ to any dealer who fails to observe the minimum retail resale prices established under Paragraph 3 hereof”] compelled retailers to enter into unlawful horizontal price fixing agreements in violation of Section 1 of the Sherman Anti-Trust Act . . . ;
“(4) Lilly was not uniformly enforcing its fair trade program on trade-marked commodities in Ohio; and
“(5) Lilly modified its fair trade program by abandoning enforcement on its prescription products in Ohio.”
The issues on the cross-petition are pending in the Court of Common Pleas, Cuyahoga County; further proceedings have been stayed by that court pending the outcome of this appeal.

 The decision was affirmed by a 3-to-4 vote. The Ohio Constitution, Art. IV, §2, provides: “No law shall be held unconstitutional and void by the supreme court without the concurrence of at least all but one of the judges, except in the affirmance of a judgment of the court of appeals declaring a law unconstitutional and void.”

 The fact that separate and unresolved issues are pending in the Ohio courts and subject to “further proceedings” therein on the cross-petition does not render the judgment of the Ohio Supreme Court on the issue here considered and decided nonfinal or unappealable within the meaning of 28 U. S. C. § 1257. Cf. Local No. 488 Construction & General Laborers’ Union, AFL-CIO, v. Curry, 371 U. S. 542, 548-552; Mercantile Nat. Bank v. Langdeau, 371 U. S. 555, 557-558.

 The McGuire Act amended § 5 (a) of the Federal Trade Commission Act, as amended. Section 5 (a) (2) of the latter statute as thus amended, 15 U. S. C. §45 (a)(2), is referred to herein simply as Section 2 of the McGuire Act, and §5 (a)(3), 15 U. S. C. §45 (a) (3), is referred to as Section 3 of the McGuire Act.

 The purpose o'f the McGuire Act is stated in its preamble: “Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That it is the purpose of this Act to protect the rights of States under the United States Constitution to regulate their internal affairs and more particularly to enact statutes and laws, and to adopt policies, which authorize contracts and agreements prescribing minimum or stipulated prices for the resale of commodities and to extend the minimum or stipulated prices prescribed by such contracts and agreements to persons who are not parties thereto. It is the further purpose of this Act to permit such statutes, laws, and public policies to apply to commodities, contracts, agreements, and activities in or affecting interstate or foreign commerce.” 66 Stat. 631-632.

 See United States v. McKesson & Robbins, Inc., 351 U. S. 305, 311, n. 14: “The McGuire Act . . . specifically exempts from the antitrust laws price fixing under 'fair trade’ agreements which bind not only retailers who are parties to the agreement but also retailers who refuse to sign the agreement.”

 See Note, 77 Harv. L. Rev. 763, 766-767 (1964).

 The Court of Appeals for Cuyahoga County expressly noted that: “These [manufacturers] have entered into many written contracts with retail pharmaceutical establishments in Ohio, determining the *526 retail resale price for their trademarked or branded commodities and have caused notice of these contracts and the prices therein established to be served on [Hudson].” 117 Ohio App. 207, 208; 176 N. E. 2d 236, 237.

 Hudson contends that the Upjohn case is distinguishable in this regard for Upjohn allegedly does not sell only to retailers. It is clear, however, that this contention was reserved for future determination by the Ohio courts pursuant to a stipulation of the parties and was not in any event passed upon in the decision from which the present appeal is taken.

 See note 2, supra.