SONY CORPORATION OF AMERICA, PLAINTIFF, v. VALUE HOUSE, INC., AND SUPERMARKETS GENERAL CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided November 30, 1972.

462

*Mr. Robert Scherling* for plaintiff.

*Mr. Howard T. Rosen,* of counsel (*Messrs. Rosen & Weiss,* attorneys), *V. Vincent Velardo,* on the brief, for defendant.

MEHLER, J. S. C. This is the continued return day of an order to show cause why defendants Value House, Inc. and Supermarkets General Corporation (Supermarkets) should not be enjoined from selling products of plaintiff Sony Corporation of America (Sony), in violation of Sony's fair trade prices.

The facts as set forth in affidavits and in statements and admissions in the brief of defendants are not in issue. Sony, a New York corporation, sells television sets and other electronic equipment in New Jersey and throughout the United States. Value House is a Maine corporation which for 11 years has sold television sets, appliances and other merchandise at retail at low mark-ups and even at mark-ups lower than many other discount dealers. Until recently its stores were located only in New England, where they sold Sony products among others. Value House is a subsidiary of Supermarkets, a New Jersey corporation, and

is authorized to do business in New Jersey. On August 28, 1972 it opened a store in West Orange and on September 28, 1972 opened one in Wayne.

In 1970 Sony entered into fair trade contracts with retailers in New Jersey and pursuant thereto established minimum retail prices for Sony products. On August 31, 1972 Value House was given notice of Sony's fair trade prices. The notice also stated that plaintiff had learned that Value House was selling Sony products below Sony's minimum retail prices in violation of New Jersey law. Although Value House has not signed a fair trade contract with Sony, it admits that a nonsigner notice of Sony's fair trade prices was sent to it on August 31, 1972, and that it sells products in New Jersey at lower than plaintiff's minimum retail prices.

*N. J. S. A.* 56:4–3 *et seq.*, commonly known as the New Jersey Fair Trade Act (the act), permits manufacturers and retailers to enter into contracts that set a retail price below which the manufacturer's products may not be resold. The act also contains a "non-signer" provision, *N. J. S. A.* 56:4–6, which gives a manufacturer a cause of action against a noncontracting party who wilfully and knowingly advertises, offers to sell or sells a manufacturer's products at less than the minimum resale prices stipulated in a contract between the producer and another. It is under the provisions of this act that Sony seeks an interlocutory injunction against defendants.

On the return day of the order to show cause defendants argued that plaintiff was not entitled to relief because it was not enforcing its fair trade prices in New Jersey. See *Menley & James Laboratories Ltd. v. Vornado, Inc.*, 90 *N. J. Super.* 404, 414–415 (Ch. Div. 1966). They have now abandoned this argument, for they admit that plaintiff's affidavits establish that plaintiff has a vigorous policy of enforcing its fair trade prices. The arguments now advanced by defendants will be considered in the order in which they have been presented.

Defendants first contend that the act, especially its non-signer provision, is an unreasonable exercise of the State's police power and violates the federal due process and commerce clauses and the New Jersey due process clause.

In *Old Dearborn Distributing Co. v. Seagram-Distillers Corp.,* 299 *U. S.* 183, 57 S. Ct. 139, 81 *L. Ed.* 109 (1936), the court declined to accept the contention that the fair trade act of Illinois was unconstitutional as violative of the due process clause of the 14th Amendment. Even though defendants say fair trade laws continue to fall whenever their constitutionality is directly attacked, it is noteworthy that in *Lionel Corp. v. Grayson-Robinson Stores,* 15 *N. J.* 191, app. dism. 348 *U. S.* 859, 75 S. Ct. 87, 99 *L. Ed.* 677 (1954), defendant's constitutional attack on the act under both the Federal and State Constitutions was rejected in an opinion which expressed the view that the *Dearborn* case was still dispositive. *Lionel Corp.* has not been overruled. I am of course bound by it since it is a decision of our highest court.

Without saying in what manner the act is an unreasonable exercise of the State's police power and violates New Jersey's due process clause, defendants merely cite a number of cases. Among them is *Remington Arms. Co. Inc. v. G. E. M. of St. Louis, Inc.,* 257 *Minn.* 562, 102 *N. W.* 2d 528, 531 (Sup. Ct. 1960), which said that the state's fair trade law, by delegating price-making power to private persons, created a new and private government, violated an essential concept of a democratic society and was constitutionally invalid. I do not reach the same conclusion, particularly since in *Dearborn* the court viewed the legislation solely as a law designed to protect the manufacturer's good will as summarized by its brand or trade mark against unfair price cutting by distributors, and our Supreme Court has not held to the contrary. Furthermore, in *Johnson & Johnson v. Weissbard,* 121 *N. J. Eq.* 585 (E. & A. 1937), the court, in sustaining the act, found that the Illinois

Free Trade Act which was attacked in *Dearborn* was similar to New Jersey's.

Defendants refer to *Union Carbide & Carbon Corp. v. Bargain Fair,* 167 *Ohio St.* 182, 147 *N. E. 2d* 481 (1958), which held that the *Dearborn* case was not controlling insofar as state constitutional principles are concerned. It is to be noted, however, that the nonsigner provision of the Ohio act, as thereafter amended (see *Hudson Distributors, Inc. v. The Upjohn Co.,* 174 *Ohio St.* 487, 190 *N. E. 2d* 460, 461 (Sup. Ct. 1963)), was held to be a valid exercise of the state's police power in *Olin-Mathieson Chemical Corp. v. The Ontario Store of Price Hill Ohio, Inc.,* 9 *Ohio St.* 2d 67, 223 *N. E.* 592 (Sup. Ct. 1967). *The House of Seagram, Inc. v. Assam Drug Co.,* 176 *N. W.* 2d 491 (S. D. Sup. Ct. 1970), cited by defendants, shows that the number of states which have held their fair trade laws to be constitutional is about equal to the number of states which have held theirs to be unconstitutional. See *Hudson Distributors Inc. v. Eli Lilly & Co.,* 377 *U. S.* 386, 84 *S. Ct.* 1273, 12 *L. Ed.* 2d 394 (1964), where the Supreme Court held that by virtue of the McGuire Act, 15 *U. S. C. A.* § 45(a) (1)–(5), a trade mark owner, when sanctioned by a state fair trade act, would be permitted to enforce even against a nonsigning retailer the stipulated minimum prices established by written contracts with other retailers. Defendants assert that in *Texas Co. v. DiGaetano,* 39 *N. J.* 120 (1963), the court left open the question whether the act violates New Jersey's constitutional provisions and that this court should now declare the act to violate the State Constitution. I do not read the case in the same way. Furthermore, in *Lionel* the question of whether the act contravenes provisions of our State Constitution was raised and decided adversely to the retailer. If there is to be a change in our law, it must come either from the Legislature or our highest court.

I am constrained by *Lionel* and *Texas Co.* to respect the continued validity of the act.

Defendants next contend that the act is an undue burden on interstate commerce as applied to the facts of this case and is therefore unconstitutional under the federal Commerce Clause. They say that the act as applied to Value House has the effect of prohibiting it from selling Sony products; that it amounts to a total prohibition of interstate commerce. From this postulate it argues that the act runs afoul of the Commerce Clause, which precludes a state from taking any action which may fairly be deemed to have the effect of impeding the free flow of trade between states. The act has no such effect. It is well settled that for constitutional purposes some activities of a business may be intrastate and therefore subject to state control while other activities of the same business may be interstate and therefore subject to federal regulation. See *e. g., United States v. South-Eastern Underwriters Ass'n.,* 322 *U. S.* 533, 548, 62 S. Ct. 1162, 1171, 88 *L. Ed.* 1440, 1454 (1944), where the court said:

In marking out these activities the primary test applied by the Court is not the mechanical one of whether the particular activity affected by the state regulation is part of interstate commerce, but rather whether, in each case, the competing demands of the state and national interests involved can be accommodated.

In *Johnson & Johnson, supra,* the court, saying at page 586 of 121 *N. J. Eq.* that it did not perceive how the requirements of our statute affect interstate commerce, continued:

It is a mere direction to a resident merchant that he must not resell trade-marked or branded articles at less than the price fixed by the producer or owner of such marked commodities. If the merchant would profit by the good will built up by the owner or producer he must comply with the requirements of the Legislature.

Even in *Freeman v. Hewit,* 329 *U. S.* 249, 67 S. Ct. 274, 91 *L. Ed.* 265 (1946), on which defendants rely, the court said:

A police regulation of local aspects of interstate commerce is a power often essential to a State in safeguarding vital local interests. At least until Congress chooses to enact a nation-wide rule, the power will not be denied to the State. [329 *U. S.* at 253, 67 S. Ct. at 277]

See also *Lionel, supra,* where at 199 of 15 *N. J.* the court said the act does not constitute an unlawful burden on interstate commerce.

██ I conclude that the authority given to manufacturers by the act is of a nature which a state may authorize.

██ Finally, defendants assert that the Supremacy Clause of the Federal Constitution nullifies contracts executed under the authority of the act to the extent tthat they conflict with the Economic Stabilization Act of 1970.

Value House says it is subject to the current restrictions imposed by the price ceilings of the foregoing act as amended, and that prices have been frozen by the President by executive orders. The price freezes are commonly known as Phase I and Phase II. It argues that state law must yield to the extent that it conflicts with federal law, and that under well-settled principles the act is subordinate to the act of 1970.

This case is somewhat akin to *Helena Rubinstein Inc. v. Charline's Cut Rate Inc.,* 135 *N. J. Eq.* 145 (E. & A. 1954), which involved a conflict between a fair trade price and an O. P. A. price ceiling. There defendants argued that they had the right to continue to sell all plaintiff's products at prices less than the minima fixed under the provisions of the New Jersey Fair Trade Act because compliance with that statute would contravene the O. P. A. price regulation. In rejecting this assertion, the court said:

This position is untenable. The difficulty is one of defendants' own making — a consequent of their own wrongful acts. First principles of equity and justice forbid that defendants shall continue to profit from their willful disregard of the state statute. It is not open to them to invoke the Federal rule as justification for the perpetuation of the original wrong. It is not a case of conflict between the Federal and State regulations. The Federal regulation was not

designed directly to modify or supersede the minimum prices in effect in March, 1942, under the State Fair Trade Act. It operated upon the prices then charged by the individual retailer. He was enjoined against sales at prices above the highest levels which he charged during that month. This price level was constituted the ceiling "regardless of any contract or other obligation." Yet the dealer is not thus privileged to retail the commodities at prices less than the minima prescribed by the Fair Trade Act.

Defendants are under no obligation to vend complainant's products; and they are not free to retail them in violation of the State statute. [at 147–148]

The court concluded by saying

Plainly, it was not designed that the "freezing" of retail prices at the level of March, 1942, should operate to the advantage of a retailer whose sales prices during that period violated the State Fair Trade Act, and thus to the detriment of all retailers of the commodities in the same category who had observed the requirements of the Fair Trade Act.

The New York case of Schreier v. Siegel, 178 Misc. 711, 36 N. Y. S. 2d 97, cited in the opinion of the Vice Chancellor, was later reversed by the Appellate Division. 265 App. Div. 36, 37 N. Y. S. 2d 624. The rationale of that decision is that the Congress did not intend "to put its stamp of approval upon unfair trade practices by permitting violators of a state fair trade law to profit at the expense of those who in good faith complied with its provisions." [at 149]

What was said in Helena Rubinstein may readily be said about Value House. It came into New Jersey with its wealth of experience in the discount and fair trade fields and must have or should have known, as did Supermarkets, operator of Pathmark stores here, that Sony fair-traded its products. Coming into New Jersey as a new venture, it might well have operated as a distinct entity and under Phase II been permitted to retail Sony products at Sony's prices. Moreover, it opened a store in Wayne on September 28, 1972, virtually a month after it was given notice of Sony's fair trade prices. It excuses its conduct by saying it believed the act to be unconstitutional or not binding on it. The difficulty, if it could be called one, in which Value House finds itself is of its own making.

What was said in *Schreier v. Siegel,* 265 *App. Div.* 36, 37 *N. Y. S.* 2d 624, 626 (App. Div. 1942), with respect to O. P. A. is apposite here.

Possibly the Price Administrator (Administrators of Phase II) may relieve the defendant of his difficulty if a proper application is made for an adjustment of the prices so as to conform to the spirit and letter of the law and of the fair trade contracts. However, pending the granting of such an application, defendant should be restrained from selling the articles complained of at any price. Thus he will be safeguarded from prosecution at the hands of the Federal authorities for violating the United States Emergency Price Control Act of 1942. At the same time plaintiffs will be protected from unfair competition at his hands.

Upon a consideration of the entire matter, I am satisfied that plaintiff is entitled to an interlocutory injunction against Value House. A similar injunction against Supermarkets does not seem to be warranted at this time, for it is Value House, not Supermarkets, which is engaged in selling Sony's products. If it turns out that Supermarkets is operating in violation of Sony's fair trade prices, plaintiff may, on notice, apply to this court for appropriate relief.