**FISONS PLC, Plaintiff–Appellant,**

v.

**Donald J. QUIGG, Commissioner of Patents & Trademarks, Defendant–Appellee.**

**No. 89–1024.**

United States Court of Appeals, Federal Circuit.

May 16, 1989.

Chapter 7 proceeding and could pursue his ap-

Bruce N. Kuhlik, Covington & Burling, Washington, D.C., argued for plaintiff-appellant. With him on the brief were Peter Barton Hutt and Ellen J. Flannery. Also on the brief was Basil P. Mann, Marshall, O'Toole, Gerstein, Murray & Bicknell, Chicago, Ill.

John C. Martin, Associate Sol., Arlington, Va., argued, for defendant-appellee. With him on the brief was Fred E. McKelvey, Sol. Charles E. Van Horn, Office of the Sol., Arlington, Va., of counsel.

Before NIES, Circuit Judge, BALDWIN, Senior Circuit Judge, and MAYER, Circuit Judge.

peal.

NIES, Circuit Judge.

At issue is the proper interpretation of Section 201 of the Drug Price Competition and Patent Term Restoration Act of 1984, 35 U.S.C. § 156 (Supp.II 1984). Fisons plc had sought extensions of the patent term for each of three patented drugs. The United States Patent and Trademark Office (PTO), which reviews such applications, denied any extension because the PTO found Fisons did not meet the statutory requirements. *See In re Fisons Pharmaceuticals Ltd.*, 231 USPQ 305 (Comm'r Pat. & Trademarks 1986) (reconsideration decision sustaining denial of extension for two of the three Fisons' patents). Fisons contends that the PTO's interpretation of the statute, which was affirmed in *Fisons plc v. Quigg*, 8 USPQ2d 1491, 1988 WL 150851 (D.D.C.1988) (Green, J.), is legally incorrect. We affirm.

## I

## BACKGROUND

The facts pertinent to this appeal are fully set forth in the opinions of the PTO and the district court. They are not in dispute and, briefly, are as follows.

Fisons owns three patents, United States Patents Nos. 3,419,578; 3,860,618; and 3,975,536, each covering a new human drug product containing the active ingredient cromolyn sodium. Each of these products represents an innovative use or dosage form of cromolyn sodium. In 1973 the Food and Drug Administration (FDA) first approved the chemical compound cromolyn sodium for commercial marketing in inhalation capsule form. Subsequently, the patented products *sub judice* were also approved.

Patent term extensions are allowed under 35 U.S.C. § 156, if certain requirements set forth therein are met. The issue here

is whether Fisons' applications satisfied the following provision in section 156(a)(5)(A):

> the permission for the commercial marketing or use *of the product* after such [FDA] regulatory review period is the first permitted commercial marketing or use *of the product* under the provision of law under which such regulatory review period occurred; . . . .

35 U.S.C. § 156(a)(5)(A) (emphasis added).[1]

The term "product" is defined in section 156(f) as follows:

> (f) For purposes of this section:
> (1) The term "product" means:
> (A) A human drug product.
> (B) Any medical device. . . .
> (2) The term "human drug product" means *the active ingredient* of a new drug . . . including any salt or ester of the active ingredient, as a single entry or in combination with another active ingredient.

35 U.S.C. § 156(f) (emphasis added).

Applying the definition of "product" provided in section 156(f) to the extension requirement of section 156(a)(5)(A), the PTO and district court interpreted the statute as limiting extensions to the term of the patent on the first permitted marketing or use of a particular *active ingredient*. Under that interpretation, it follows that because Fisons' patented new products containing cromolyn sodium did not qualify as the *first* permitted commercial marketing or use of the active ingredient cromolyn sodium, extensions of the patent term for the subject patents were not permissible.

## II

Fisons contends that the term "product" in section 156(a)(5)(A) should not be interpreted to mean an "active ingredient." Rather, per Fisons, the term "product" therein refers to the particular drug prod-

---

**1.** It is undisputed that the remaining four pertinent requirements for patent term extension, expressed in section 156(a), are met:

(1) the term of the patent had not expired before an application is submitted under subsection (d) for its extension;

(2) the term of the patent has never been extended;

(3) an application for extension is submitted by the owner of record of the patent or its agent and in accordance with the requirements of subsection (d);

(4) the product has been subject to a regulatory review period before its commercial marketing or use; . . . .

uct that the FDA approved. Because each application for extension is based on the FDA's *first* approval of a different use or dose of a product incorporating cromolyn sodium, under Fisons' interpretation, it satisfies the requirement of section 156(a)(5)(A). In support of its interpretation, Fisons points to the last sentence of section 156(a) which states: "The product referred to in paragraphs (4) and (5) is *hereinafter* in this section referred to as the 'approved product'." (Emphasis added.) Thus, per Fisons, "product" in paragraph (5) must mean the entire composition of the drug product, not just the active ingredient, inasmuch as FDA approval goes to the former, not merely the latter. One difficulty with this argument is that by its terms the sentence does not apply to paragraph (5), which *precedes* the sentence. It would do violence to the plain language to make the last sentence into a substantive definition to be read back into paragraph (5). The last sentence is merely a drafting device adopted to simplify the language of *subsequent* provisions in the section. Accordingly, we cannot agree with Fisons' position.

We also cannot agree with Fisons' argument that the court's interpretation renders meaningless the restriction in section 156(c)(4) that "in no event shall more than one patent be extended for the same regulatory review period for any product." Fisons converts this restriction into a broad authorization to extend one patent for each regulatory review period. Judge Green's analysis rejecting these arguments is exemplary. *See Fisons plc*, 8 USPQ2d at 1495–96.

Because Fisons' proposed interpretation conflicts with the plain meaning of the statutory language, "it may prevail only if a contrary legislative intent is *clearly shown* by the legislative history." *LSI Computer Sys., Inc. v. United States Int'l Trade Comm'n*, 832 F.2d 588, 590, 4 USPQ2d 1705, 1707–08 (Fed.Cir.1987) (emphasis added). As the Supreme Court stated:

> While we now turn to the legislative history as an additional tool of analysis, we do so with the recognition that only the most *extraordinary showing* of contrary intentions from those data would justify a limitation on the "plain meaning" of the statutory language. When we find the terms of a statute unambiguous, judicial inquiry is complete, except in "'rare and exceptional circumstances,'" *TVA v. Hill*, 437 U.S. 153, 187, n. 33 [98 S.Ct. 2279, 2298, n. 33, 57 L.Ed.2d 117] (1978), quoting *Crooks v. Harrelson*, 282 U.S. 55, 60 [51 S.Ct. 49, 50, 75 L.Ed. 156] (1930).

*Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) (emphasis added).

In an analysis the district court said was made out of "an abundance of caution," *Fisons plc*, 8 USPQ2d at 1496, the court thoroughly examined the legislative history of section 156. *Id.* at 1497–1500. We have reviewed that thoughtful analysis and the extensive legislative history itself. There is strong support for the interpretation adopted by the PTO and the district court inasmuch as *some* legislators explicitly criticized section 156(a)(5) for not covering new uses and dosages. On the other hand, the statements in the legislative history on which Fisons relies fail to provide the clearly expressed legislative intention, contrary to the statutory language, necessary to avoid the conclusive effect of that language itself.

Fisons makes what can only be characterized as a "policy argument" pointing to statements of lofty goals indicating that Congress broadly sought to encourage pharmaceutical innovation by enacting the 1984 Act. Fisons urges that it makes little sense, in view of such goals, to restrict patent term extensions so as to encourage development only of new chemical entities (NCEs), and not of new uses and doses for such drugs. Per Fisons, developments of new uses and doses for known compounds are as important as NCE developments. It is irrelevant, however, that we might agree with Fisons that, as a matter of policy, Congress might better achieve its goals through a more liberal grant of patent term extension benefits. Matters of policy are for Congress, not the courts, to decide.

*See, e.g., Hudson Distribs., Inc. v. Eli Lilly & Co.,* 377 U.S. 386, 395, 84 S.Ct. 1273, 1279–80, 12 L.Ed.2d 394 (1964); *Baltimore & Ohio Ry. Co. v. Jackson,* 353 U.S. 325, 331, 77 S.Ct. 842, 846, 1 L.Ed.2d 862 (1957). Accordingly, Fisons' policy arguments are unhelpful in our interpretation of the complex statutory provision at issue.

## III

## CONCLUSION

In view of the thoroughness of the district court's opinion and its persuasive analysis, we see no reason to repeat all of the nuances and permutations of Fisons' arguments and the PTO's responses. Rather, we refer the reader to the district court's published opinion, which we endorse.[2] In sum, we hold that the district court correctly applied the definition given in 35 U.S.C. § 156(f) to the term "product" used in section 156(a)(5)(A). We are convinced that such an interpretation comports with the intent of Congress as expressed in the statute. As a consequence of that interpretation, the district court did not err in upholding the PTO's denial of Fisons' three applications for extensions of patent terms. Accordingly, the district court's judgment, granting the PTO's motion for summary judgment on this issue, is affirmed.

AFFIRMED.

---

**2.** The district court attributed criticism, found in the legislative history, of section 156(a)(5) to the pharmaceutical industry in a quotation from which footnote 49 is dropped. *See Fisons plc,* 8 USPQ2d at 1497. That quotation does not apply to the patent provisions in Title II of the bill, however, but to the market exclusivity provisions of Title I. To that extent we correct the district court's opinion.