UNITED STATES of America

v.

**Eddie W. JACKSON, Appellant.**

**No. 73–1519.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 1, 1974.

Decided March 5, 1975.

Daniel E. Schultz, Washington, D. C. (appointed by this Court), for appellant.

John J. Mulrooney, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief for appellee. Earl J. Silbert, U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

ROBINSON, Circuit Judge:

By a single-count indictment, Eddie W. Jackson was charged with having, "corruptly by threats, endeavored to intimidate Barry Sutton, a witness in the United States District Court for the District of Columbia," in violation of 18 U.S.C. § 1503.[1] Waiving a jury, he was tried by the court, found guilty and sentenced to imprisonment. Now, on this

---

1. "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States magistrate or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1503 (1970).

appeal, he asserts that the trial judge erred in denying his motion for a judgment of acquittal after the Government had presented its evidence. For reasons articulated herein, we remand the case for reconsideration.

## I

We first recount the undisputed events precipitating this litigation. Jackson was on trial in the District Court on a charge of robbery.[2] The Government subpoened Sutton, a youth, thirteen or fourteen years of age, who was an eye-witness to the affair. Sutton identified Jackson as a participant in the robbery, and after so testifying Sutton was excused by the trial judge.[3]

At the end of the court day, both sides had rested, and the judge recessed the trial. Remaining, of course, were summations by counsel, instructions by the judge and deliberations by the jury. Still later that same day, Jackson encountered Sutton in a sandwich shop and approached him. "If I get a day for something I didn't do," Jackson said, "I will will you and your father." He added, "I should drag you out on the street and whip you"; "[i]f I had my pistol," he declared, "I'd shoot you right now."[4]

That, in brief summary, was the Government's evidence. When it was in, defense counsel moved for a judgment of acquittal on the ground that no violation of Section 1503 was indicated. The trial judge denied the motion, whereupon defense counsel introduced two stipulations,[5] rested and renewed the motion. The judge heard argument, requested memoranda from counsel, and took the matter under advisement. In due course, he rendered his decision rejecting Jackson's contentions and finding him guilty as charged, and shortly thereafter he imposed sentence.[6]

## II

Section 1503 defines several distinct offenses, two of which have relevance here. One is an "endeavor," by "threat," to "intimidate" a "witness" in a federal court "in the discharge of his duty."[7] The other is "injur[y]" to a "witness in his person or property on account of his attending or having attended such court . . . or on account of his testifying or having testified to [some] matter pending therein."[8] Jackson argues here, as he did in the District Court, that after Sutton testified and was excused, he was no longer a "witness" in the robbery case, and that the threatening language addressed to him could not have constituted an endeavor to intimidate him in the discharge of his duty because that duty had already ended. Jackson further argues that when one acts toward another because he previously served as a federal-court witness, Section 1503 becomes operative only if the latter is "injure[d] . . . in his person or property," a circumstance neither alleged[9] nor proved in the case at bar.[10]

---

2. United States v. Jackson, Crim.No. 1455–72 (D.D.C.).

3. At trial, the parties stipulated that Sutton was thereby discharged from the obligation of the subpoena.

4. Subsequently, appellant was convicted in the robbery case, and on appeal the conviction was affirmed. United States v. Jackson, 162 U.S.App.D.C. 20, 495 F.2d 1076 (1974).

5. One was the stipulation already mentioned, see note 3, *supra*. The other was to the effect that when, on the day Sutton testified, the judge recessed the trial, both sides had rested.

6. Jackson was sentenced to imprisonment for a term of six to eighteen months, the sentence to operate consecutively to a sentence of two

to six years on the robbery conviction. See note 4, *supra*.

7. See note 1, *supra*.

8. See note 1, *supra*.

9. See text *supra* at note 1.

10. With but one exception, since 1831 it has been a federal crime to endeavor by threats to intimidate a federal-court witness "in the discharge of his duty." See Act of March 2, 1831, ch. 99, § 2, 4 Stat. 488; Rev.Stat. § 5399 (1878); Act of March 4, 1909, ch. 321, § 135, 35 Stat. 1113; Act of June 8, 1945, ch. 178, § 1, 59 Stat. 234; Act of June 25, 1948, ch. 645, 62 Stat. 769; Pub.L. No. 90–578, tit. III, § 301(a)(1)(3), 82 Stat. 1115 (1968). That exception was a short period following the 1945 enactment, when Congress eliminated the

■ As a criminal statute, Section 1503 is to be construed with customary strictness.[11] To sustain the charge set forth in the indictment,[12] it was incumbent upon the Government to prove that when accosted by Jackson, Sutton was still a witness in the robbery case, and that the threats were an endeavor to intimidate him in the discharge of his duty as such.[13] But in applying these requirements, we must not lose sight of the statutory purposes,[14] one of which clearly is the protection of participants in federal judicial proceedings, and thereby the protection of the public interest in the due administration of justice.[15] Reading Section 1503 in this light, we now examine the evidence to ascertain whether it was legally sufficient to support Jackson's conviction.

## III

■ The first question for the trier of fact was whether, when confronted by Jackson, Sutton remained a witness. Indubitably, one is a witness, within the meaning of Section 1503, when he knows or is supposed to know material facts, and expectably is to be called to testify to them.[16] Just as clearly, he is not a witness when, despite his testimonial potential, there is no present prospect of ever exploiting it.[17] And surely one is no longer a witness when the proceeding in which he has testified is no longer pending.[18]

quoted language on the suggestion of Attorney General Biddle that it was surplusage. See S.Rep. No. 225, 79th Cong., 1st Sess. 2 (1945), U.S.Code Cong.Serv. 1945, p. 723; 91 Cong. Rec. 4800, 5507 (1945). The language was restored by the 1948 amendment, however, without explanation. See S.Rep. No. 1620, 80th Cong., 2d Sess. (1948); H.R.Rep. No. 304, 80th Cong., 1st Sess. (1947). The prohibition on injuring a witness because of his previous service as such was imposed by the 1945 amendment. See S.Rep. No. 225, *supra.*

**11.** United States v. Essex, 407 F.2d 214, 218 (6th Cir. 1969); Haili v. United States, 260 F.2d 744, 745 (9th Cir. 1958); United States v. Ryan, 455 F.2d 728, 733 (9th Cir. 1971).

**12.** See text *supra* at note 1.

**13.** *E. g.,* Overton v. United States, 403 F.2d 444, 446 (5th Cir. 1968). See also note 1, *supra.*

**14.** *Compare* Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609, 619, 93 S.Ct. 2469, 2478, 37 L.Ed.2d 207, 217 (1973); FTC v. Fred Meyer, Inc., 390 U.S. 341, 349–52, 88 S.Ct. 904, 908–910, 19 L.Ed.2d 1222, 1228–1230 (1968); Hudson Distributors, Inc. v. Eli Lilly & Co., 377 U.S. 386, 391–95, 84 S.Ct. 1273, 1277–1279, 12 L.Ed.2d 394, 398–400 (1964); Commissioner v. Bilder, 369 U.S. 499, 502–04, 82 S.Ct. 881, 882–883, 8 L.Ed.2d 65, 68–69 (1962).

**15.** *See* Samples v. United States, 121 F.2d 263, 265 (5th Cir.), cert. denied, 314 U.S. 662, 62 S.Ct. 129, 86 L.Ed. 530 (1941); Anderson v. United States, 215 F.2d 84, 88 (6th Cir.), cert. denied, 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 698 (1954); Smith v. United States, 274 F. 351, 353 (8th Cir. 1921); United States v. Metcalf, 435 F.2d 754, 756 (9th Cir. 1970); Broadbent v. United States, 149 F.2d 580, 581 (10th Cir. 1945).

**16.** United States v. Cioffi, 493 F.2d 1111, 1119 (2d Cir.), cert. denied, 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974); Hunt v. United States, 400 F.2d 306, 307 (5th Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 629, 21 L.Ed.2d 566 (1969); Walker v. United States, 93 F.2d 792, 795 (8th Cir. 1938); United States v. Griffin, 463 F.2d 177, 179 (10th Cir.), cert. denied, 409 U.S. 988, 93 S.Ct. 34, 34 L.Ed.2d 254 (1972).

**17.** *See* Berra v. United States, 221 F.2d 590, 596–97 (8th Cir. 1955), aff'd, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956); Walker v. United States, *supra* note 16, 93 F.2d at 795; Cotton v. United States, 409 F.2d 1049, 1054 (10th Cir. 1969), cert. denied, 396 U.S. 1016, 90 S.Ct. 577, 24 L.Ed.2d 507 (1970).

**18.** United States v. Thomas, 47 F. 807 (W.D. Va.1891). That case was decided under a forerunner of the present § 1503, which did not contain the current prohibition against injury to a witness on account of his prior appearance or testimony. See note 10, *supra.* There a witness was assaulted two months after dismissal of the case in which he had testified. The court held that the assault was outside the purview of the statute because "when [the] relation between the court and the witness ceases, the protection of the law, under this section, is terminated." 47 F. at 808. Compare United States v. McLeod, 119 F. 416 (N.D.Ala.1902), also decided under a prior statute, which lacked the present proscription on injury to a federal-court officer on account of prior performance of official duty. It was there held that an assault on a United States commissioner, precipitated by but more than four months after final termination of proceedings before him, was not a violation of the section as it then stood because the "commissioner at the time of the assault had no power

The case before us does not squarely present any of these situations. Sutton did testify, and although he had been excused, the trial was not over when Jackson threatened him, nor at the time did the court lack authority to command his reappearance as a witness.[19] We agree that "the protection of the law, under [Section 1503], is coincident and continuous with the power of the court over the witness, to compel him to attend and give evidence in some pending case. . . ."[20] Thus Sutton's status paralleled that of a witness between an initial and a subsequent appearance,[21] and the fact that the subpoena had been discharged[22] is immaterial.[23] We hold that one who is called as a trial witness retains that character throughout the duration of the trial.[24]

## IV

The fact that Jackson threatened Sutton does not of itself establish a violation of Section 1503.[25] In the statutory language, the threats must have been a part of an "endeavor[ ] to . . intimidate" him "in the discharge of his duty."[26] The word "endeavor," the Supreme Court has said, "describes any effort or assay to accomplish the evil purpose that the section was enacted to prevent."[27] And it is the endeavor to bring about the forbidden result, and not success in achieving the result, that Section 1503 makes a crime.[28] Here the threats Jackson uttered[29] had a reasonable tendency to intimidate,[30] whether they actually did so or not.

Jackson, of course, was fully aware of the robbery case and Sutton's relation to

---

to exercise, nor any duty to perform, which could be influenced by the assault. There was nothing which he could do or leave undone, 'in the discharge of his duty' . . . ." 119 F. at 418.

**19.** "The authority of courts to compel attendance of witnesses in cases pending before them is an essential part of our system of administering justice." Universal Airline, Inc. v. Eastern Air Lines, 88 U.S.App.D.C. 219, 224, 188 F.2d 993, 998 (1951).

**20.** United States v. Thomas, *supra* note 18, 47 F. at 808.

**21.** *Compare* Kloss v. United States, 77 F.2d 462, 465 (8th Cir. 1935); Smith v. United States, *supra* note 15, 274 F. at 352–53, discussed in note 39, *infra.*

**22.** See note 3, *supra.*

**23.** Samples v. United States, *supra* note 15, 121 F.2d at 266; Walker v. United States, *supra* note 16, 93 F.2d at 795; Smith v. United States, *supra* note 15, 274 F. at 353.

**24.** We intimate no view as to whether a witness remains such, for purposes of § 1503, after conclusion of the ongoing trial simply because of the possibility that he might be called to again testify in the event of a retrial.

**25.** Compare Ferina v. United States, 302 F.2d 95, 102 (8th Cir.), cert. denied, 371 U.S. 819, 83 S.Ct. 35, 9 L.Ed.2d 59 (1962).

**26.** *See* United States v. Kee, 39 F. 603, 604 (D.S.C.1889). For decisions treating intent requirements of other § 1503 provisions different in phraseology, *see* Pettibone v. United States, 148 U.S. 197, 204–09, 13 S.Ct. 542, 545–547, 37

L.Ed. 419, 423–425 (1893), Caldwell v. United States, 95 U.S.App.D.C. 35, 36–38, 218 F.2d 370, 371–73 (1954), cert. denied, 349 U.S. 930, 75 S.Ct. 773, 99 L.Ed. 1260 (1955); United States v. Cioffi, *supra* note 16, 493 F.2d at 1119; Kong v. United States, 216 F.2d 665, 668 (9th Cir. 1954); Broadbent v. United States, *supra* note 15, 149 F.2d at 581. *See also* United States v. Keen, 26 Fed.Cas. (No. 15,511) pp. 693–94 (Cir.Ct.D.Mass.1830).

**27.** United States v. Russell, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553, 554–555 (1921). *See also* Knight v. United States, 310 F.2d 305, 307 (5th Cir. 1962); Samples v. United States, *supra* note 15, 121 F.2d at 266; Broadbent v. United States, *supra* note 15, 149 F.2d at 581. In *Russell,* the court explained that by employing the word "endeavor," Congress "got rid of the technicalities which might be urged as besetting the word 'attempt' . . . ." 255 U.S. at 143, 41 S.Ct. at 261, 65 L.Ed. at 554–555. *See also* Osborn v. United States, 385 U.S. 323, 333, 87 S.Ct. 429, 434–435, 17 L.Ed.2d 394, 401 (1966).

**28.** Osborn v. United States, *supra* note 27, 385 U.S. at 333, 87 S.Ct. at 434–435, 17 L.Ed.2d at 401; United States v. Russell, *supra* note 27, 255 U.S. at 143, 41 S.Ct. at 261, 65 L.Ed. at 554–555; Roberts v. United States, 239 F.2d 467, 470 (9th Cir. 1956); Catrino v. United States, 176 F.2d 884, 886 (9th Cir. 1949).

**29.** See text *supra* at note 4.

**30.** See United States v. DeStefano, 476 F.2d 324, 330 (7th Cir. 1973); see also cases cited *supra* notes 26–28.

it, and the threats themselves make plain that Jackson was prompted by testimony Sutton had given.[31] More critically, however, it was essential that Jackson's remarks have been motivated at least partly by a purpose to deter further testimony by Sutton or to intimidate him with respect to any testimony he might give, for the endeavor must have been to intimidate Sutton in the discharge of his continuing duty as a witness, and an essential element of the offense was the intent to do that.[32]

 In our view, the evidence was legally sufficient to support a conclusion that Jackson so intended to intimidate Sutton in the discharge of his continuing duty as a witness in the robbery case. He declared that he would kill Sutton "[i]f [he got] a day," and that he should whip and shoot him on the spot.[33] Manifestly, those threats were capable of intimidating,[34] and the reference to Sutton's participation as a witness was unmistakable.[35] Intent may, and generally must, be proved circumstantially;[36] normally, the natural probable consequences of an act may satisfactorily evidence the state of mind accompanying it,[37] even when a particular mental attitude is a crucial element of the offense.[38] We perceive nothing that would divert cases of the instant type from this branch of legal doctrine.[39]

**31.** See text *supra* at note 4.

**32.** Knight v. United States, *supra* note 27, 310 F.2d at 307; United States v. Ryan, *supra* note 11, 455 F.2d at 734.

**33.** See text *supra* at note 4.

**34.** See note 30, *supra*, and accompanying text.

**35.** See text *supra* at note 4. Thus this case is unlike United States v. Kee, *supra* note 26, 39 F. at 604, holding that an earlier version of § 1503 was not violated where threats were uttered or violence was inflicted because of an insult unrelated to the fact that the victim was a witness, made without knowledge that he ever was a witness, and induced entirely by repetition of the insult.

**36.** American Communications Ass'n v. Douds, 339 U.S. 382, 411, 70 S.Ct. 674, 690, 94 L.Ed. 925, 950–951 (1950); Baer v. United States, 54 App.D.C. 24, 26, 293 F. 843, 845 (1923); Government of Virgin Islands v. Lake, 362 F.2d 770, 776 (3rd Cir. 1966); Stone v. United States, 113 F.2d 70, 74–75 (6th Cir. 1940); United States ex rel. Vraniak v. Randolph, 261 F.2d 234, 237 (7th Cir. 1958), cert. denied, 359 U.S. 949, 79 S.Ct. 733, 3 L.Ed.2d 681 (1959); McKenna v. United States, 232 F.2d 431, 437 (8th Cir. 1956).

**37.** *See* Liggins v. United States, 54 App.D.C. 302, 306, 297 F. 881, 885 (1924); Easterday v. United States, 53 App.D.C. 387, 390, 292 F. 664, 667 (1923), cert. denied, 263 U.S. 719, 44 S.Ct. 181, 68 L.Ed. 523 (1924); Government of Virgin Islands v. Lake, *supra* note 36, 362 F.2d at 776; Bradford v. United States, 129 F.2d 274, 277 (5th Cir.), cert. denied, 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942); Stone v. United States, *supra* note 36, 113 F.2d at 74–75; United States ex rel. Vraniak v. Randolph, *supra* note 36, 261 F.2d at 237; United States v. Price, 464 F.2d 1217, 1218 (8th Cir.), cert.

denied, 409 U.S. 1040, 93 S.Ct. 522, 34 L.Ed.2d 489 (1972); Haugen v. United States, 153 F.2d 850, 853 (9th Cir. 1946). "It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts. The jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any intentional act or conscious omission." United States v. Wilkinson, 460 F.2d 725, 733 (5th Cir. 1972).

**38.** Easterday v. United States, *supra* note 37, 53 App.D.C. at 390, 292 F. at 667; Stone v. United States, *supra* note 36, 113 F.2d at 74–75; United States ex rel. Vraniak v. Randolph, *supra* note 36, 261 F.2d at 237; United States v. General Motors Corp., 121 F.2d 376, 402 (7th Cir.), cert. denied, 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497 (1941); United States v. Price, *supra* note 37, 464 F.2d at 1218; McKenna v. United States, *supra* note 36, 232 F.2d at 437. "Actions of the accused are set in time and place in many relationships. Environment illustrates the meaning of acts, as context does that of words. What a man is up to may be clear from considering his bare acts by themselves; often it is made clear when we know the reciprocity and sequence of his acts with those of others, the interchange between him and another, the give and take of the situation." Cramer v. United States, 325 U.S. 1, 32–33, 65 S.Ct. 918, 934, 89 L.Ed. 1441, 1459–1460 (1945).

**39.** *See* Duke v. United States, 90 F.2d 840, 841–42 (4th Cir.), cert. denied, 302 U.S. 685, 58 S.Ct. 33, 82 L.Ed. 528 (1937); Smith v. United States, *supra* note 15. In the latter case, a witness testified at a civil trial, was excused and, without knowledge of the accused, was informally requested to testify further on rebuttal. As the witness was returning to do so,

## V

Notwithstanding the legal capability of the evidence, however, we are somewhat in the dark as to whether it was found as a fact that in voicing the threats Jackson intended, in part at least, to intimidate Sutton in the discharge of any further witness-duty which he might be called upon to perform. The technique of proving a required intent is one thing; the determination as to whether there was that intent is quite another. However the proof of intent is undertaken, there can be no conviction unless the trier of fact ascertains that the intent actually existed.[40] In the case before use, the evidence was susceptible to interpretation either as simply an outward manifestation of displeasure at Sutton's earlier testimony or as additionally a warning with respect to any further testimony he might give. Since the case was tried without a jury, there are no instructions to inform us as to whether the point was considered; and, quite understandably, the trial judge's remarks at the conclusion of trial focused on other important aspects of the case,[41] and did not elucidate the construction he placed on this segment of the evidence.

In these circumstances, we believe the interests of justice will best be served by a remand of the case to enable elimination of any doubt on that score.[42] If the trial judge did find, or now finds, that Jackson entertained the intent which would bring his conduct within the compass of Section 1503, the conviction must stand; otherwise the court's judgment must be recast. In the latter event, the judge may, of course, reduce the conviction to a lesser included offense[43] or acquit, as upon reconsideration he might be persuaded.

So ordered.

---

he was assaulted and beaten by the accused, who at his own trial testified that he thought the witness had completed his testimony and did not know that he was going to take the witness stand again. 274 F. at 352. It was argued that there was no substantial evidence of any intention on the accused's part to intimidate the witness, but that the object of the beating was the witness' earlier testimony, a past event. The court, however, responded:

> But Smith knew that Bohannon had testified and had gone home. Smith testified that he was mad on account of that testimony. He found Bohannon back in Ft. Smith, within two blocks of the courtroom where evidence was still being introduced in the [civil] case, and he knocked him down. If he had struck him hard enough, the blow would have impeded him more; but it had a certain tendency to influence and intimidate him from again testifying. It was in the nature of a warning, at least, that if he testified again, he might be struck again. The natural and

inevitable consequence of an act may be considered in deducing the intention of the actor, and the argument that there was no substantial evidence in this case to warrant a jury in finding that Smith intended to influence, intimidate, or impede Bohannon from again testifying in the [civil] case in which Smith was one of the defendants, fails to convince.

*Id.* at 352–53.

40. *See* United States v. Cangiano, 491 F.2d 906, 910 (2d Cir.), cert. denied, 419 U.S. 904, 95 S.Ct. 188, 42 L.Ed.2d 149 (1974).

41. The principal questions the judge had to address were whether at the time Sutton was still a witness, and as to whether threats without personal or property injury could amount to a violation of § 1503.

42. See 28 U.S.C. § 2106 (1970).

43. See, *e. g.*, D.C.Code §§ 22–504, 22–507 (1973).