UNITED STATES of America, Appellee,

v.

John Edward WILSON, Appellant.

UNITED STATES of America, Appellant,

v.

John Edward WILSON, Appellee.

Nos. 85–5264(L), 85–5265.

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1986.

Decided July 15, 1986.

James A. Matish, Clarksburg, W.Va., for appellant.

William A. Kolibash, U.S. Atty., Thomas O. Mucklow, Asst. U.S. Atty., Wheeling, W.Va., on brief, for appellee.

Before WINTER, Chief Judge, and MURNAGHAN and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

John Edward Wilson was convicted by a jury on a three count indictment for violating 18 U.S.C. § 1512(b)(1).[1] Thereafter, upon Wilson's motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the district court entered a judgment of acquittal as to counts two and three, but affirmed the conviction on count one. On appeal, Wilson asks this court to reverse the trial court's decision on count one; the government seeks a reversal on counts two and three. For the reasons set forth below, we affirm the district court's order on count one and reverse on counts two and three.

I.

On April 3, 1985, Wilson was being escorted by U.S. Marshals from a district courtroom, where he had been brought in on a writ to testify on behalf of the government in the trial of *United States v. Joseph James McDermott*. Three other government witnesses in the same trial, Pauline Virginia Sawyer, Kimberly Renee Lindsey, and Patrick Charles Malone, were sitting in

---

1. That statute reads in pertinent part:

(b) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from—

(1) attending or testifying in an official proceeding;

. . . .

or attempts to do so, shall be fined not more than $25,000 or imprisoned not more than one year, or both.

the hallway outside of the courtroom. As Wilson walked past the three, he pointed at each witness and with a sneer said in a low tone of voice: "Your asses belong to Joe" and "you are a bunch of jokes and should be in jail too."[2]

Sawyer, Lindsey and Malone stated that they understood these comments to be threats regarding their testimony in the *McDermott* trial. Sawyer, who had not testified yet, became so upset that she attempted to leave the courthouse and temporarily decided not to testify against McDermott. Lindsey, who had testified for the government, but had not been excused yet by the court, was upset and frightened by the comments. Malone, who had testified and had been excused by the court, felt the statements were idle threats toward him.

The government brought a three count indictment against Wilson, charging that he did

> intentionally harass [Sawyer—Count One; Lindsey—Count Two; Malone— Count Three], thereby attempting to hinder, delay, prevent and dissuade [each one] from testifying in an official proceeding, in violation of Title 18, United States Code, Section 1512(b)(1).

After the jury returned a guilty verdict on all three counts, the district court acquitted Wilson on the charges relating to Lindsey and Malone, finding that the facts as to those two counts fell outside the purview of § 1512(b)(1). The court reasoned that neither Malone nor Lindsey were actually harassed and dissuaded from giving testi-

mony against McDermott, since both had already testified. The court further reasoned that Malone was no longer a witness, having been excused by the court before Wilson made the statements, and thus he could not be protected by a "witness protection statute."

■ We cannot accept the lower court's judgment. First, the evidence was substantial enough to sustain the jury's verdict that the witnesses were harassed; each justifiably reacted adversely to Wilson's statements. *Cf.* 128 Cong.Rec. H8469 (daily ed. Oct. 1, 1982) (purpose of § 1512(b) is to "reach thinly-veiled threats that create justifiable apprehension" in a witness).

■ Second, the court erroneously assumed that § 1512(b)(1) applies only to conduct that actually dissuades testimony. The statute, and the indictment upon which Wilson was tried, both state that "attempts to" dissuade testimony are sufficient for conviction. The success of an attempt or possibility thereof is irrelevant; the statute makes the endeavor a crime. *Cf. United States v. Murray*, 751 F.2d 1528, 1534 (9th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 381, 88 L.Ed.2d 335 (1985).[3]

■ Finally, Malone retained his witness status, despite his previous excusal by the court. Section 1512(b)'s protection of a person who has been called to testify at a trial continues throughout the duration of that trial. *Cf. United States v. Jackson*, 513 F.2d 456 (D.C.Cir.1975).[4] The *McDer-*

---

2. There was some dispute at trial as to what statements were actually made by Wilson and to whom the comments were directed. The facts recited herein, however, are in accordance with the requirement that we must view the evidence in the light most favorable to the government. *See United States v. MacCloskey*, 682 F.2d 468 (4th Cir.1982) (in deciding a motion for judgment of acquittal, evidence is taken in the light most favorable to the prosecution).

3. See also other cases construing 18 U.S.C. § 1503, as that statute is the predecessor to § 1512. *United States v. Chandler*, 604 F.2d 972 (5th Cir.1979), *cert. denied*, 444 U.S. 1104, 100 S.Ct. 1074, 63 L.Ed.2d 317 (1980); *United States v. Jackson*, 513 F.2d 456 (D.C.Cir.1975).

4. The *Jackson* court held that under 18 U.S.C. § 1503, a witness retains that character during the entire trial, even if the court excuses the person after he testifies. We adopt such holding as applicable to § 1512(b) because § 1503 was 1512's predecessor. Moreover, § 1512(b) was enacted to "strengthen existing legal protections for victims and witnesses of federal crimes." S.Rep. No. 532, 97th Cong., 2d Sess. 9, *reprinted in* 1982 U.S.Code Cong. & Ad.News 2515. Thus, if § 1503 protected excused witnesses in an ongoing trial, § 1512(b) must be so intended. Indeed, such intent is shown by Congress's providing for protection of "potential witnesses" under § 1512(b). An excused witness is certainly a "potential witness" during the duration of trial since the court is empowered to recall him. *Cf. Shillitani v. United States*, 384

*mott* trial was ongoing at the time Wilson made the comments. Accordingly, threats to the excused witness Malone violated § 1512(b).

## II.

■ Next, we must address Wilson's contention that he should be acquitted on all three counts because he lacked the intent to harass the witnesses. We reject this argument because, viewing the evidence in the light most favorable to the government, there is substantial evidence of Wilson's intent. Wilson knew that the three witnesses were in the hallway for the purpose of testifying against McDermott. Wilson did not know that Lindsey and Malone had already testified. Wilson spoke in a low tone of voice, so that the U.S. Marshals could not hear him. He made the comments with a sneer on his face while pointing at the witnesses. The statements, "your asses belong to Joe" and "you are a bunch of jokes and should be in jail too" could reasonably be interpreted as harassing remarks. Furthermore, Wilson's intent can be inferred from the adverse reactions the witnesses suffered upon hearing the threats. This court has recognized that

[*Pettibone v. United States*, 148 U.S. 197, 207, 13 S.Ct. 542, 546–47, 37 L.Ed. 419 (1893) ] acknowledge[d] the propriety of inferring specific intent where the disfavored result naturally flows from a wrongful undertaking:

Specific intent to violate the statute must exist to justify a conviction.... It is true that if the act in question is a natural and probable consequence of an intended wrongful act, then the unintended wrong may derive its character from the wrong that was intended.

*See also United States v. Jackson*, 168 U.S.App.D.C. 198, 202, 513 F.2d 456, 460 (1975) ("normally, the natural probable

U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966) ("[I]t is essential that courts be able to compel the appearance and testimony of witnesses" at any stage of the proceeding.)

consequences of an act may satisfactorily evidence the state of mind accompanying it.... We perceive nothing that would divert cases of the instant type from this branch of legal doctrine"). *Accord United States v. Harris*, 558 F.2d 366, 369 (7th Cir.1977).

*United States v. Neiswender*, 590 F.2d 1269, 1274 (4th Cir.), *cert. denied*, 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979).

■ Wilson also argues on appeal that the court erred in instructing the jury that "harass" is defined as

"conduct that was designed and intended to badger, disturb or pester for the unlawful purpose or purposes as alleged in the indictment counts."

Wilson requested that harass be defined as "repeated attacks." We can find no error in either the jury instructions or the lower court's refusal to adopt Wilson's request.

■ The term "harass," as it is used in § 1512(b), is not defined by statute. Section 1515 in 18 U.S.C. contains definitions for § 1512 terms, but harass is omitted. This implies that Congress intended that "harass" take its ordinary meaning in § 1512.[5] *See Perrin v. United States*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."), *quoted in Beigay v. Traxler*, 790 F.2d 1088 (4th Cir.1986).

The ordinary meaning for harass includes both a single act and a series of acts. *See* BLACK'S LAW DICTIONARY 645 (5th ed. 1979); THE AMERICAN HERITAGE DICTIONARY 600 (5th ed. 1970). Thus, the court did not err by refusing to limit the definition of harass to "repeated attacks." In addition, defining harass as conduct that would "badger, disturb or pester," was in accordance with the common

5. Section 1514 defines harass, but this statutory definition is not applicable to § 1512(b). Obviously, Congress intended the definition limited to § 1514, a civil statute, since § 1515 was specifically adopted to provide definitions for § 1512, a criminal statute.

meaning of the word, *see id.*, and was sufficiently broad to allow the jury to find that "harass" requires more than one act. Accordingly, the instruction contained no reversible error.

■ The final issue on appeal is whether Wilson was prejudiced, thereby warranting a cautionary instruction or a mistrial, when the prosecution associated Wilson's name with two members of the Gallo family. Wilson contends that because the "Gallo Organization" was known for its drug related offenses, Wilson's character was tarnished by the reference and the jury could have found him guilty by association. The district court rejected this argument, and we affirm.

The reference to Wilson and the two Gallos did not have a prejudicial effect upon Wilson's defense. The government, on redirect examination of witness Lindsey, asked: "Mrs. Lindsey, you were indicted along with Carl Lee Gallo and John Edward Wilson and Freda Gallo Wilson and others." This question did not lead the jury to associate Wilson with the "Gallo Organization." Indeed, that term was not used in the reference. In addition, the jury had previously heard of the Gallo Organization only once during trial, and that was at voir dire when Wilson asked if anyone had ever "heard of the so-called Gallo Drug Ring." Moreover, after the contested reference was made, Wilson testified and admitted to certain criminal acts and responded without objection to questions regarding the Gallo Organization. Thus, we do not see how a single reference to Wilson and two Gallos during the Lindsey examination can provide grounds for mistrial. In addition, the lack of a cautionary instruction is likewise no grounds for reversal, especially in light of the fact that Wilson never requested such instruction at trial.

In accordance with the above opinion, we affirm the district court on the Sawyer count and reverse on the Lindsey and Malone counts. We find no error in the jury instructions or the court's refusal to grant a mistrial. Accordingly, we affirm in part, reverse in part and remand with instructions that the jury verdict on counts two and three be reinstated.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.