Darryl J. SMITH, Appellant,

v.

UNITED STATES, Appellee.

No. 90–564.

District of Columbia Court of Appeals.

Argued April 25, 1991.

Decided May 24, 1991.

---

Stephen I. Singer, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Stevan E. Bunnell, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and G. Paul Howes, Asst. U.S. Attys., were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and KERN, Senior Judge.

STEADMAN, Associate Judge:

The issue in this appeal, although technically one of sufficiency of the evidence, basically involves the scope of the criminal offense of obstruction of justice insofar as it applies to witness tampering. The relevant provision, D.C.Code § 22–722(a)(1) (1989), reads:

> (a) A person commits the offense of obstruction of justice if that person:

> (1) Corruptly, or by threats or force, endeavors to influence, intimidate, or impede any juror, witness, or officer in any court of the District of Columbia in the discharge of his or her duties.

Appellant was convicted under this provision for attempting to persuade two friends of his to testify falsely on his behalf about his lack of participation in an alleged murder. We affirm.

I

Appellant was arraigned on August 24, 1988, for a murder committed twenty-two days before. Shortly after being released, on September 8, 1988, he asked two friends of his, Dominic Dorsey and Joseph Calhoun, to testify that they had been with appellant at the scene of the killing and had seen the killing committed not by appellant but instead by one Larry Epps. As Dorsey testified, "he wanted us to say that—when we went to court, he said he wanted us to be his witness and say that he didn't do it." About 10 days later, appellant again approached Calhoun, along with another friend of appellant, Lamarr Young, and asked them to testify to a more elaborate story also pinning the blame on Epps. Appellant told Young to tell this story "to whoever when I come to court and tell it to the judge." Some days later, after learning that the police wanted to talk to witnesses, appellant, Calhoun, and Young again talked about the story.

In fact, Calhoun was not present at the scene of the killing or anywhere near it. Dorsey was a member of the group that accompanied appellant to the apartment house where the killing took place and was a witness to the events in the apartment

where appellant, the victim, and Epps (among others) were all present shortly prior to the killing; however, Dorsey was not present at the time or scene of the killing, which took place in a stairwell. Calhoun initially told the Assistant United States Attorney that Epps had been the killer but eventually admitted he was not anywhere present. Dorsey refused to go forward with the false story. Young, who was an eyewitness, testified at the trial that appellant had been the killer. At the trial, appellant was acquitted of the murder but convicted on two counts of obstruction of justice under D.C.Code § 22–722(a)(1), which related to his conversations with Calhoun and Dorsey.[1]

Appellant's arguments with respect to the sufficiency of the evidence address the two counts in somewhat different but related ways. We take each in turn.

## II

With respect to Dorsey, appellant's assertion is that no evidence was introduced that at the time appellant spoke to him, Dorsey was expected to testify and that he was therefore not a "witness" as required by the statute.[2]

■ The word "witness" is not defined in the statute itself. The jury was instructed, without objection by appellant, that in order to convict, the government must prove beyond a reasonable doubt that Dorsey "was a witness or a potential witness in a case pending in the District of Columbia Superior Court."[3] The jury was further instructed:

The term "witness" means a person who knows or may know facts that are material to a pending case and who is expected to testify in that case, whether or not the person has actually been subpoenaed to testify at that time. A person is not a witness when regardless of his knowledge of material facts bears [sic—presumably "there is"] no present expectation or intention that the person will be called to testify.

This was a substantially correct statement of the law. D.C.Code § 22–722 was part of the District of Columbia Theft and White Collar Crimes Act of 1982. In the main, it carried forward the provisions of pre-existing law, D.C.Code § 22–703 (1981), which in turn reflected the provisions of former 18 U.S.C. § 1503 (1970). The Extension of Comments of the chairperson of the Committee on the Judiciary, July 20, 1982, in commenting on proposed section 722, states that "as under the current law, the term 'witness' is intended to mean a person who knows or is supposed to know material facts about a case which is pending and who may be called to testify," citing in a footnote *United States v. Jackson*, 168 U.S.App.D.C. 198, 513 F.2d 456 (1975). In that case, involving 18 U.S.C. § 1503, the court stated that "indubitably, one is a witness, within the meaning of section 1503, when he knows or is supposed to know material facts, and expectably is to be called to testify to them." *United States v. Jackson, supra*, 168 U.S.App.D.C. at 201, 513 F.2d at 459.

■ The facts here supported a jury finding that Dorsey was a witness within the above definition. As one who had ac-

1. Appellant was not charged with obstruction of justice with respect to his conversation with Young. The trial court granted appellant's motion for a judgment of acquittal on a third count of obstruction of justice relating to one Howard Benson–El.

2. Appellant appears to bifurcate this argument into two parts, namely, whether Dorsey himself expected to testify and whether appellant himself knew or had reason to know that Dorsey was expected to testify. We see no significance in this distinction for purposes of this appeal, since a jury could easily infer that both Dorsey and appellant knew or had reason to know of

Dorsey's potential as a witness. In this regard, we think the facts here significantly differ from *Walker v. United States*, 93 F.2d 792 (8th Cir. 1938), on which appellant places heavy reliance. In that case, a split 2–1 decision, the person approached was a co-defendant who could not be forced to testify, and the court apparently thought it important that the evidence show that she "intended to be a witness." No such problem is presented in the case before us.

3. Appellant now takes issue with the use of the phrase "potential witness," but this is a helpful clarification whose import was made clear by the further explanation of the term.

companied appellant to the general area of the killing, he clearly had knowledge of relevant facts immediately surrounding the offense, and could be expected to testify concerning them. *See Toliver v. United States*, 468 A.2d 958 (D.C.1983). Certainty as to one's role as a witness is not the test; it is whether there is a reasonable expectation to that effect. As put in the Extension of Comments quoted above, the issue is whether the person "may" be called to testify. Thus, even if Dorsey is regarded as a potential witness for the prosecution, we think the jury could find him to be a protected "witness."

### III

The argument with respect to Calhoun is more intricate. Here it cannot be questioned that at the moment when appellant first approached Calhoun, he (Calhoun) knew no facts material to appellant's murder trial and therefore at that point in time was not a "witness." Appellant asserts that under the statute, a person must have the status of a "witness" at a point pre-existing the moment when a defendant first "endeavors to influence, intimidate, or impede" that person in any statements concerning the offense. The government meets this argument in two mutually reinforcing ways, both of which we think are correct.

### A

■ First, however relevant appellant's position may be with respect to witnesses for the prosecution, it fits poorly when dealing with witnesses for the defense. As to the latter, it is the defendant who to a greater or lesser degree determines who are to fall in that category, potential or actual. If, as here, by his actions, a defendant attempts to vest a person with the status of one who "may know" or "is supposed to know"—for it is not actual knowledge that is required—then that person indeed becomes a witness within the meaning of the statute.

The statutory goal of preventing the obstruction of justice requires no less. The provision at issue here by its language covers the broad category of participants, potential or actual, in pending criminal proceedings, and its application extends not only to those who inherently fall within that category by their actual knowledge of material facts but those as well who are by the defendant's own acts brought within that category.

■ The defendant argues that such an interpretation makes meaningless the prohibition against subornation of perjury, contained in another section of the 1982 Act, D.C.Code § 22–2512 (1989). However, that provision, dealing with a wide variety of statements under oath, covers a multitude of instances which would not be reached by § 22–722(a)(1), and the latter section likewise covers far more than attempts to seek false testimony. *Cf. United States v. Partin*, 552 F.2d 621, 631 (5th Cir.) (noting that attempted subornation of perjury "may well" violate witness tampering provision of former federal obstruction of justice statute), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977). Furthermore, there is *nothing remarkable* in the fact that the same act may violate two or more statutory provisions. *See, e.g., Holt v. United States*, 565 A.2d 970 (D.C.1989) (en banc).

### B

■ Furthermore, appellant's contact with Calhoun here was not limited to a single encounter. By the time the second and third meetings had occurred, Calhoun had become knowledgeable of facts material to the pending litigation; namely, appellant's consciousness of guilt in seeking fabricated testimony. *See Smith v. United States*, 312 A.2d 781, 784–85 (D.C.1973) (testimony that defendant had threatened a witness constituted highly relevant implied admission of guilt). Indeed, the trial court without objection instructed the jury that they "may consider" appellant's attempts to influence Dorsey and Calhoun to testify falsely as evidence "tending to prove Mr. Smith's consciousness of guilt," although they were not required to do so. While we recognize that reliance upon this theory

standing alone could present potential jury unanimity problems, no such objection was raised at trial or request for a unanimity instruction made, and we perceive no "plain error" in that regard. *Shivers v. United States,* 533 A.2d 258, 263 (D.C.1987).

For the foregoing reasons, the judgment of conviction appealed from must be

*Affirmed.*