UNITED STATES of America,
Plaintiff–Appellee,

v.

Ben Walter BASHAW, Jr.,
Defendant–Appellant.

No. 92–5152.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 11, 1992.

Decided Nov. 18, 1992.*

---

* This decision was originally issued as an "un-published decision" filed on November 18, 1992.

Debra Teufel Phillips (argued), Mercedes C. Maynor–Faulcon, Asst. U.S. Attys. (briefed), Nashville, TN, for plaintiff-appellee.

Henry Haile (argued and briefed), Lyell, Seaman & Shelton, Nashville, TN, for defendant-appellant.

Before: KEITH and BATCHELDER, Circuit Judges; and WELLFORD, Senior Circuit Judge.

BATCHELDER, Circuit Judge.

Defendant Ben Walter Bashaw, Jr. appeals his conviction under 18 U.S.C. § 1503 for obstructing the due administration of justice by making threatening statements to two jurors who had served on the jury in his brother's trial. We reverse the district court's conviction of Bashaw because the statute does not apply to Bashaw's conduct.

## I.

DeWanda Lee and Everett Hutchens were jurors in the trial of *United States v. Frederick Bashaw*, which was held on September 3–4, 1991. Lee and Hutchens say that defendant Ben Bashaw, Frederick Bashaw's brother, was staring at the jurors while they sat in the jury box during the Frederick Bashaw trial and that the stares intimidated and frightened them. A court security officer also indicated that a spectator at the trial was staring at the jurors during the trial, but did not identify Bashaw as the person doing the staring. The jury returned a guilty verdict against Frederick Bashaw for possession of cocaine. After the verdict was returned, jury foreman Hutchens and juror James Elliott proceeded to the Clerk's Office. As they were about to enter the office, defendant Ben Bashaw walked by with a group of people. Hutchens testified that Bashaw said, "[T]here are two of the m_____-f_____ there." Hutchens said that he advised someone in the Clerk's Office of Bashaw's remark. Elliott did not hear the remark, but noted that Hutchens was upset by it.

Defendant Bashaw then went outside the courthouse with the group. At that time, Juror Lee was sitting on the wall surrounding the courthouse. Lee contends that someone, although she could not identify who it was, said to her, "[T]here is the black bitch right there." Lee said defendant stared at her while the group walked down the street. She testified that the look was intimidating and that the encounter frightened her. Lee contends that while she was still sitting there, defendant drove by the courthouse slowly in a burnt orange Cadillac Seville with the windows down. Hutchens then came outside to wait with Lee until her ride arrived, and he saw a Jeep and the same Cadillac drive by the courthouse. This time, however, Lee contends that she could not identify the driver because the windows, which were now opened only a crack, were tinted. Hutchens then went inside the building to report the matter to court security personnel. A security officer came out to ask Lee to come inside the courthouse. As the security officer was talking to Lee, he and Lee saw the Cadillac drive by again. Lee went back into the courthouse and waited there until her ride arrived.

Bashaw and his family and friends testified that Bashaw did not make the comments alleged. Several witnesses also testified that they went home with Bashaw and that he did not circle the courthouse, but merely drove down the street once on the way home. Defendant argued that the government's witnesses mistook Bashaw's car because his car does not have tinted windows as the car identified by the witnesses had.

On September 25, 1991, a grand jury indicted defendant on a four-count indictment for violations of 18 U.S.C. § 1503. Counts 1 and 3 alleged that defendant corruptly or by threats endeavored to influ-

170

ence, intimidate or impede Lee and Hutchens "in the discharge of [their] duties as [ ] petit juror[s]...." Counts 2 and 4 alleged that defendant corruptly or by threats endeavored to "influence, obstruct, or impede the due administration of justice" in the Frederick Bashaw case with threatening communications to Lee and Hutchens. After defendant waived a jury trial, the district court heard testimony on the case. On a motion for Judgment of Acquittal, the court dismissed Counts 1 and 3, stating that "there is no way that things that occurred after the verdict was returned could constitute an impeding or intimidation of a juror in the discharge of their duties." The court explained that he was not dismissing Counts 2 and 4 because "[t]he due administration of justice does include what occurs after the verdict is over. The due administration of justice includes the protection of the integrity of the process and protection of the integrity of the individual jurors, even though they may have concluded their duties." At the close of evidence, the district court found defendant guilty on Counts 2 and 4. Bashaw was sentenced to 37 months on each count, to be served concurrently. On December 17, 1991, defendant filed a Motion to Arrest Judgment and a Renewed Motion for Judgment of Acquittal, which the district court denied. On December 19, 1991, defendant filed a motion for new trial or for further hearing. This motion was also denied. Defendant now appeals his conviction.

## II.

Section 1503 states:

§ 1503. Influencing or injuring officer or juror generally

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1503. Defendant was convicted under "the omnibus clause" of section 1503, which is the third phrase of the statute: "[W]hoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice...." *Id.* § 1503. The statute has a *mens rea* requirement that limits the scope to those who "corruptly" or intentionally seek to obstruct justice. *United States v. Jeter,* 775 F.2d 670, 675 (6th Cir.1985), *cert. denied,* 475 U.S. 1142, 106 S.Ct. 1796, 90 L.Ed.2d 341 (1986). This requires that one impede the due administration of justice with "the general intent of knowledge *as well as the specific intent of purpose to obstruct.*" *Id.* at 679. " 'The key words in the statute [section 1503] are "corruptly" and "endeavors." ' The statutory language clearly encompasses 'endeavors' or *attempts* to obstruct the administration of justice regardless of the success in actual obstruction." *Id.* at 675 (citations omitted). Because section 1503 is intended to "protect the administration of justice in federal court and those participating therein," due administration of justice has been interpreted as extending only to pending judicial proceedings. *United States v. Wood,* 958 F.2d 963, 974 (10th Cir.1992), *amended,* 1992 WL 58305 (10th Cir.1992); *United States v. Neal,* 951 F.2d 630, 632 (5th Cir.1992) (pending judicial proceeding required). In addition, the defendant must have knowledge that a proceeding is pending. *Pettibone v. United*

*States,* 148 U.S. 197, 205, 13 S.Ct. 542, 546, 37 L.Ed. 419 (1893) (predecessor to section 1503); *United States v. Vesich,* 724 F.2d 451, 454 (5th Cir.1984).

### III.

Defendant first argues that Counts 2 and 4 of the indictment are invalid because they fail to state a violation of 18 U.S.C. § 1503. He contends that the "omnibus clause" of section 1503, prohibiting attempts corruptly to influence the due administration of justice, does not apply to conduct directed toward jurors. Bashaw points to the fact that this omnibus clause does not specifically mention jurors, as clauses 1 and 2 do.

■ This argument is without merit. The heading of section 1503, "Influencing or injuring officer or juror generally," clearly indicates that the entire section applies to jurors and officers. In addition, although the omnibus clause does not mention jurors or court officers in particular, the wording of the statute clearly applies to an attempt to threaten, influence or impede jurors as participants in the due administration of justice. As the Eleventh Circuit explained, "[t]he main body of the obstruction of justice statute specifically targets conduct that interferes with the duties of a juror or court officer. The omnibus clause is essentially a catch-all provision which generally prohibits conduct that interferes with the due administration of justice." *United States v. Thomas,* 916 F.2d 647, 650 n. 3 (11th Cir.1990). Therefore, we find that Counts 2 and 4 of the indictment are not invalid.[1]

### IV.

■ Defendant next contends that the evidence is insufficient to support the conviction because a conviction under section 1503 requires proof of specific intent to influence corruptly the due administration of justice. Inasmuch as the jurors had completed their service in the Frederick Bashaw case and had been discharged, defendant Ben Bashaw asserts that he could not have influenced or had the specific intent to influence the due administration of justice. He also argues that the evidence was insufficient to pinpoint him as the one who made the statements.

■ We agree that the evidence was insufficient to bring the conduct of Bashaw within the scope of section 1503, and therefore we reverse the conviction. We review the defendant's insufficiency of the evidence claim by examining "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gallo,* 763 F.2d 1504, 1518 (6th Cir.1985), *cert. denied,* 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986). Even when a defendant is convicted after a bench trial, the test is "whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding beyond a reasonable doubt that the defendant was guilty." *United States v. Niver,* 689 F.2d 520, 529 (5th Cir.1982). We must resolve all conflicts in the testimony in the government's favor and draw every reasonable inference from the evidence in favor of the government. *United States v. Tilton,* 714 F.2d 642, 645 (6th Cir.1983). Specific findings of the trial court are reviewable under the "clearly erroneous" standard. *United States v. Atwell,* 570 F.2d 650, 652 (6th Cir.1978).

We find that the evidence was insufficient to convict Bashaw of a violation of section 1503 because there was no evidence that the conduct which is the basis for the indictment could have interfered with the due administration of justice. The government's strongest argument is that Bashaw's threats could have a chilling effect if

---

1. Our holding that the indictment is valid is not inconsistent with our finding in Section IV below that section 1503 does not cover defendant's conduct. As discussed below, section 1503 could encompass the conduct charged in the indictment if the jurors were not finished with their duty. Therefore, although in this case the government presented no evidence that these jurors were continuing their jury service, the lack of evidence in this case does not mean that the indictment was flawed, since in fact Bashaw's conduct could have constituted a violation of section 1503.

these jurors remain in the pool of jurors who are to be voir dired for subsequent trials, and they fear assenting to a guilty verdict because of their past experiences. However, the government failed to put on any evidence at trial that these two jurors were continuing their jury duty after the Frederick Bashaw trial and would be part of the pool of jurors to be called for subsequent trials. Absent this evidence, the omnibus clause of section 1503 is not broad enough to cover defendant's conduct.

We begin with the language in the clauses of section 1503, which specify the conduct prohibited by the statute. The second of those three clauses, which immediately precedes the omnibus clause, reads, "or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, *or on account of his being or having been such juror, . . .*" 18 U.S.C. § 1503 (emphasis added). This language indicates that Congress intended any injury to a juror, either before or after a juror's service, to implicate the statute. Congress uses no such language in clause 1 regarding interference with the discharge of duties or in clause 3, the omnibus clause, covering obstruction of the due administration of justice. This indicates that Congress did not intend the omnibus clause to apply to interference with jurors who have been, but are no longer, jurors.

■ Further, the omnibus clause refers only to interference with "the due administration of justice," while the other two clauses are directed to more specific activities such as influencing or intimidating jurors or officers of the court in the discharge of their duties or because of their service as jurors or officers. Several courts have interpreted the omnibus clause of section 1503 as requiring that the defendant's conduct "must be such, however, that its natural and probable effect would be the interference with the due administration of justice." *Thomas,* 916 F.2d at 651; *United States v. Brand,* 775 F.2d 1460, 1464 (11th Cir.1985). Although an

individual need not succeed in obstructing justice to violate section 1503, a defendant must at least undertake action "from which an obstruction of justice was a reasonably foreseeable result." *Thomas,* 916 F.2d at 651. Unless Lee and Hutchens were to have continued as jurors and participated in other court proceedings, there was no administration of justice for Bashaw to impede. Because the jury's duties already had been completed, his statements could not have had as their "natural and probable effect" the obstruction of justice nor was such an obstruction "reasonably foreseeable". It is true that Frederick Bashaw's case was still pending and would remain so until he was sentenced and until the period for appealing the conviction and sentence had run. *Wood,* 958 F.2d at 974. Therefore, the Frederick Bashaw case would meet the requirement that the proceeding be pending. *See Wood,* 958 F.2d at 974. However, the jurors' duty as far as Frederick Bashaw's case was over, and they would not be involved in sentencing or in a new trial if one was granted on appeal. And, there was no evidence that these jurors would continue to serve as jurors in subsequent trials, in which their judgment might be affected by fear or intimidation.

This case is markedly different from *United States v. Fernandez,* 837 F.2d 1031 (11th Cir.), *cert. denied,* 488 U.S. 838, 109 S.Ct. 102, 102 L.Ed.2d 78 (1988), in which a prosecutor was threatened by a defendant's brother immediately after the district court sentenced the defendant. The Eleventh Circuit reasoned that because the prosecutor was still responsible for representing the government in an appeal or against a motion to reduce the sentence of the defendant, the brother had attempted to obstruct justice. *Id.* at 1034. In contrast, the jurors here would not be involved in any post-verdict activities involving Bashaw's brother, and therefore Bashaw's statements could not have affected the due administration of justice.[2]

In addition, the lack of evidence as to the jurors' continued service goes to defen-

---

2. The case of *United States v. Jackson,* 513 F.2d 456, 458 (D.C.Cir.1975), is also inapposite. In that case, a witness was threatened by the defen-

dant at the close of the evidence but before the attorneys' closing arguments. The D.C. Circuit held that the witness who was threatened re-

dant's intent. Defendant could not have been found to have the "specific intent of purpose to obstruct" as required for a conviction when the trial was over, the jurors had completed their duties, and he could not alter the jury's guilty verdict. Regardless of whether Bashaw was merely expressing "sour grapes" as he contends or threatening jurors, the record does not reflect any evidence of a specific intent to interfere with the due administration of justice, in light of the fact that the jurors were done with their work.

■■■ The only evidence of any interference with the due administration of justice is Bashaw's staring at the jurors while they were in the jury box during his brother's trial and before the verdict was rendered. However, as the trial court correctly noted, "I don't believe that that is sufficient to invoke the criminal laws of this country, staring." Although Hutchens and Lee noted that Bashaw was staring at the jury, there is no evidence that Bashaw engaged in any conduct prior to the verdict—such as statements, threats or physical force—substantiating that the stares were intended to intimidate the jurors and obstruct the administration of justice. Thus, the evidence of staring presented in this case is insufficient to implicate section 1503.[3]

## V.

Defendant's final argument is that his due process rights were violated when the government's chief witness, Hutchens, committed perjury by testifying at trial inconsistently with his previous statement to the FBI and by fabricating a story about his residence. We need not address this claim because, in any case, the judgment must be reversed and the case dismissed for the reasons outlined above.

## VI.

Accordingly, we find that defendant's conviction must be reversed and the case against him dismissed.

mained a witness under section 1503 because the proceeding was still pending. *Id.* at 459. However, that case did not involve the omnibus clause of section 1503 as this case does, but instead involved the clauses prohibiting threats to intimidate witnesses or injuries to witnesses. *Id.* at 458. Furthermore, in contrast to this case, the trial was not over, and the witness could have been recalled by the court. *Id.* at 460. Finally, the *Jackson* court specifically stated that witnesses lose their status as witnesses once the proceeding is no longer pending, *id.* at 459, and that it would intimate no view about whether a witness remains a witness after the trial "simply because of the possibility that he might be called to again testify in the event of a retrial." *Id.* at 460.

**3.** We note that even if the government had presented evidence of the jurors' continuing obligation of jury service sufficient to bring the defendant's conduct within the scope of section 1503, there is insufficient evidence to convict defendant as to Juror Lee. The only evidence of any interference with the due administration of justice either during or after Juror Lee's jury service was that Bashaw stared at her. Accepting the trial court's credibility determinations and Lee's version of the events that took place, Juror Lee could not identify Bashaw as the one who made the threatening statement, but instead merely testified that someone in the group made the statement and that defendant stared at her as they walked past. And, Lee's other testimony that Bashaw stared at her during the trial and drove by the courthouse several times after the trial does not link Bashaw with the statement. Therefore, there was no evidence presented as to Juror Lee from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt of obstructing justice.